GABRIELE GIORDANO, complainant,

*v.*

THE ASBURY PARK AND OCEAN GROVE BANK, a body corporate of New Jersey et al., defendants.

[Decided September 29th, 1931.]

*Mr. Peter B. Adubato* (by *Mr. Frank Metro*), for the complainant.

*Messrs. Durand, Ivins & Carton* (by *Mr. James D. Carton*), for the defendant Asbury Park and Ocean Grove Bank.

BERRY, V. C. (orally).

The object of this bill is to recover property formerly owned by the complainant and which he claims he was de-

prived of through a series of fraudulent transactions, or at least transactions which he alleges to have been fraudulent. The present controversy arises out of the following state of facts :

In May, 1921, the complainant sold certain machinery to one Aquileno and took his note of $350 in payment therefor. This note he had discounted at the defendant Asbury Park and Ocean Grove Bank. When it came due the note was not paid by the maker and was protested for non-payment. Thereafter, at the request of the complainant who was endorser on the note, the Asbury Park and Ocean Grove Bank brought suit against the maker, and the complainant as endorser, and obtained a judgment for $356.05 in one of the district courts of this county. The complainant in that suit was unable to obtain satisfaction of its judgment, although execution was issued thereon against the maker of the note, and at the request of the complainant in this suit the bank thereafter took a new note from the complainant in payment or settlement of the judgment obtained on the Aquileno note. That note was in some sum slightly in excess of the judgment obtained on the original note. As collateral security for the note the complainant executed a mortgage on certain real estate which he owned in the city of Asbury Park. At the time he executed the mortgage there was, according to his statement here, a mortgage of $1,100 on the property. The collateral mortgage was given to the bank but it was not recorded, apparently by arrangement with the complainant. Subsequently and without any notice to the bank, the complainant executed additional mortgages on the same property, bringing up the total mortgages on the property to approximately $4,000. However, the bank carried this new note for some considerable period of time and until the early part of 1925, when, the note not having been paid, suit was brought against the complainant by the bank and judgment entered in the sum of $420.70. Execution was issued on that judgment sometime later, my recollection is that it was in the early part of 1927, the judgment having been entered in 1925. This execution was delivered to the sheriff of Mon-

mouth county and he levied on other property, real estate owned by the complainant in Asbury Park and which is the subject of the present suit. That real estate consisted of a plot of ground one hundred and seventeen by one hundred and twenty-two and had erected thereon several buildings, I believe two or three single-family houses and one two-family house. After he levied on this property the sale under the execution was advertised for March 28th, 1927, and then at the request of the complainant, the sale was adjourned from week to week by the sheriff until May 13th, 1927, at which time the property was sold by the sheriff at the usual place of holding sheriff's sales in Asbury Park, and was purchased by the plaintiff in the law suit for $100. The bank held this property until September, 1928, at which time the property was sold to the defendants Strada and Rowe for $14,000. The basis of the relief asked for in the present complaint is that the plaintiff in the law suit which resulted in the judgment under which the sheriff sold, that is, the Asbury Park and Ocean Grove Bank, and the sheriff and the bank's attorney conspired to defraud the complainant and to hold the sheriff's sale at a time and place of which the complainant was not notified and surreptitiously sold the property at an unconscionable price to the plaintiff in that law suit. The complainant complains that at the time the property was sold it had a value of from thirty to thirty-five or possibly forty thousand dollars and that it was encumbered only by mortgages aggregating approximately $5,000.

If these were the only facts which were presented to the court the complainant would undoubtedly be entitled to some relief, but there are other circumstances in connection with this affair which should be mentioned. There is no doubt in my mind but that the sale was regularly held and there was nothing unusual in the sheriff's procedure except possibly the fact of the numerous adjournments which were granted by the attorney for the plaintiff in the law suit which had resulted in the judgment, and these adjournments were allowed apparently as a favor to the defendant in that suit.

During the period in which that sale was advertised the complainant here made an application to the chancellor to restrain the sale. In fact, he made three applications as I understand it from the testimony, all of which were denied by the chancellor, and complainant has stated that the chancellor filed an opinion denying relief. After that denial the complainant entrusted his interests to a man by the name of Joe Scott, upon whom he relied thereafter to protect his interests from sale and upon whom he apparently relied to pay the claim of the Asbury Park and Ocean Grove Bank, but who has neither paid the claim, or, apparently, done anything else to protect the complainants interests There was some suggestion that the complainant had relied upon Mr. Carton who represented the bank and that because of that reliance he did not attend the sheriff's sale at which this property was sold. There is absolutely nothing to this contention. There is no evidence at least from which a conclusion could be arrived at to the effect that Mr. Carton had made any representations to Mr. Giordano upon which he could or did rely. The only thing that Mr. Carton could probably be criticised for was perhaps in being too lenient with the complainant.

After the denial of the relief by the chancellor, the complainant, not being satisfied with the chancellor's decision, took an appeal to the court of errors and appeals and there the chancellor's decision was affirmed. Not being satisfied with that, it appears that he brought suit against the Asbury Park and Ocean Grove Bank in the law courts alleging defamation of character or some other ground for damages, and that that suit was tried in one of the local county courts, apparently relief denied and an appeal taken to the supreme court and the action of the court below affirmed, and then a further appeal taken to the court of errors and appeals, which court affirmed the supreme court's action. It appears that the last appearance in the court of errors and appeals was in November of 1927 or thereabouts, at which time, according to the complainant's testimony, Chief-Justice Gummere suggested that the bank might still be willing to turn

back the property to him provided he paid what was due it. It further appears that this suggestion was acceded to by counsel for the bank, and it appears that thereafter Mr. Carton, acting for the bank, submitted to Mr. Giordano a statement of the amount which would be required to redeem the property. That statement, or a copy of it, is attached to the answering affidavits in this cause and shows that at that time the bank had spent, either by reason of its judgment, for costs, taxes and counsel fees, and in payment of the costs of foreclosure of a prior mortgage and the purchase of the property at foreclosure sale, a sum totalling about $6,222; and that in addition thereto the bank claimed interest on the original judgment. That statement was submitted to the complainant under date of November 4th, 1927, I believe, and the complainant was told that he could redeem the property at any time by payment of that amount on or before December 31st of that year. No attention whatever appears to have been paid to this communication by the complainant and the bank heard nothing more from him in reference to the matter. Subsequently and in September of 1928, the bank, after having the property appraised, sold it to the defendants Strada and Rowe. In the meantime, however, the bank had been obliged to take up several other mortgages on the property, which at the time of the sale brought their total investment in the premises to something over $11,000. They had in this period of their ownership collected slightly over $400 in rents from the property also. Since Mr. Strada and Mr. Rowe purchased the property they have spent on it a total of some $3,200 in repairs.

Now complainant asks that the original sale by the sheriff under the law judgment be set aside; that the sale in the foreclosure proceedings be set aside, and that the sale from the bank to Strada and Rowe be set aside; that an account be taken of the rents, issues and profits of the premises since the first sheriff's sale, both from the bank and from the purchasers from the bank; that the present owners of the property be directed to reconvey the property to the complainant and for necessary restraint in the meantime. This

bill was filed on April 27th, 1930. It would appear from the record, therefore, that from November 4th, 1927, until April 27th, 1930, nothing had been done by Mr. Giordano toward redeeming the property by payment to the bank of its expenditures in connection therewith. That, however, is not quite correct, because before the present bill was filed, I should say probably two months before the present bill was filed, Mr. Giordano, who has acted all through this controversy as his own solicitor until to-day when counsel has appeared in court for him, handed me a bill and a proposed order, the bill making the same parties who are defendants in this suit, defendants in that suit, and I believe some other parties also. After having read the bill, which was so inartistically drawn and combined so many alleged causes of action, both at law and in equity, I advised Mr. Giordano to employ counsel to redraft it. It was redrafted, apparently, with some assistance from some counsel, and when it was finally presented on April 27th an order to show cause was issued thereon, and on the return day of that order, in view of all the circumstances, the court deemed it best to bring the matter on for final hearing in order that the rights of all the parties might be determined in this suit. That hearing has now been had.

Although there is nothing before the court to require it, the defendant, Rowe, has accounted for the property so long as it has been in his possession or ownership, and, of course, in that account has accounted for his partner, Mr. Strada, but there is certainly nothing in the whole proceeding which has afforded any basis for any relief for the complainant against these two defendants. They purchased the property apparently honestly and innocently and without notice of any rights which the complainant may have had therein. They paid a fair value for the premises, they having been appraised at $16,500 by one set of appraisers and $15,500 by another appraiser, shortly before this sale was consummated. Therefore, so far as these two defendants are concerned, it is quite plain that there is no basis for any relief against them and certainly the bill must be dismissed as to them.

The right to relief against the bank depends entirely upon whether or not any fraud or concealment was practiced upon the complainant either by or for the defendant bank. I think it may be conceded that a sale of the property for $100 at the time of the first sheriff's sale, the equity at that time being between $5,000 and $7,000, was such a sale that if proper proceedings had been taken then to have protected the rights of all the parties, that sale might have been set aside, because the sale price was unconscionable; but mere inadequacy of price, ordinarily, is not ground for setting aside a sale when, in other respects, the sale has been fair and conducted according to law. In the present case there is absolutely nothing to indicate that the officers of the law entrusted with this sale were prompted by any considerations except the obligation resting upon them to perform their duties and carry out the mandate of the court. The sales were not fraudulent and the foreclosure sale particularly has already been confirmed by this court. The bank was the purchaser at that foreclosure sale as it was under the original sale under the law execution, so that whatever the rights of the bank or any of the parties were prior to the foreclosure sale, certainly at that time the bank succeeded to a perfect title to the premises. Since then there has been no denial by the bank of any of Mr. Giordano's right, if he had any right, to redeem the property, and the court of errors and appeals, as I understand it, did not decide that he did have such right, but suggested, as I take it, *ex bene-volentia,* that the bank might permit a redemption, rather than go through the formalities of setting aside the sale such as Mr. Giordano requested. The suggestion apparently was acceded to by the bank, but Mr. Giordano did not take advantage of the bank's offer, preferring apparently to continue his litigation. His delay of over a year or a year and a half or such a matter, after being afforded the opportunity to redeem, during which time the property had been sold by the bank, in my judgment now precludes him from any relief at all, if he ever was entitled to any, and I shall therefore dismiss the bill of complaint as to all of the defendants.